**HENRY S. MILLER REALTY TRUST, Appellant,**

v.

**BOBBY McGEES CONGLOMERATION OF DALLAS, INC., Harry Pappas and Robert F. Sikora, Appellees.**

No. 19933.

Court of Civil Appeals of Texas, Dallas.

May 16, 1979.

Rehearing Denied June 16, 1979.

Glenn A. Portman, Johnson, Bromberg, Leeds & Riggs, Dallas, for appellant.

David K. Meyercord, Strasburger & Price, Dallas, for appellees.

Before GUITTARD, C. J., and STOREY and HUMPHREYS, JJ.

GUITTARD, Chief Justice.

The lessor in a commercial lease brought this action against the lessee for a declaratory judgment construing a lease providing for monthly rentals based on a percentage of "gross sales." The case was submitted on stipulations of fact to the trial judge, who held that the percentage rental should be computed after first deducting the mixed-beverage tax paid by a sublessee operating under a permit to sell mixed alcoholic beverages. The lessor appeals, contending that this tax should not be deducted from "gross sales" because it was part of the sublessee's expense of doing business rather than a separate sales tax on the sublessee's customers. We affirm on the ground that the mixed-beverage tax is an amount "collected and paid out for any sales as excise tax" within the specific exclusion from "gross sales" provided in the lease.

The relevant portions of the provision in question, with our emphasis of the crucial language, is as follows:

The term *"gross sales"* as used herein shall be construed to include the entire amount of the *sales price*, whether for cash or other wise, *of all sales of merchandise* (including gift and merchandise certificates), services *and other receipts whatsoever* of all business conducted in or from the Demised Premises. . . . *Gross sales shall not include, however, any sums collected and paid out for any sales or excise tax* imposed by any duly constituted governmental authority . . . .

Neither party contends that this language is ambiguous. Appellant seeks to distinguish the gross receipts tax imposed on holders of mixed beverage permits from the "limited sales tax" imposed on other retail sellers, and contends that the lease allows no deduction for the mixed-beverage tax as it does for the sales tax. The language of the two acts, however, is similar. The mixed-beverage tax is "imposed on the gross receipts of a permittee from the sale, preparation, or service of mixed beverages" by section 202.02 of the Texas Alcoholic Beverage Code (Vernon 1978). The "limited sales tax" is "imposed on the receipts from the sale at retail of all taxable items within this State" by article 20.02 of the Limited Sales, Excise and Use Tax Act, Tex.Tax.—Gen.Ann. art. 20.02 (Vernon Supp.1978). The Sales Tax Act further provides that the sales tax shall be added to the sale price and becomes a debt from the purchaser to the retailer which may be recovered in the same manner as the purchase price, and that the retailer is prohibited from advertising or representing that he will assume or absorb the tax. Tex.Tax.—Gen.Ann. art. 20.021 (Vernon 1969).

Lessor concedes that the mixed-beverage tax is an "excise tax," but contends that it is not within the stipulated exclusion of "any sales or excise tax" because, unlike the sales tax, it is not "collected" from the customer and then "paid out" to the state. Consequently, lessor contends that the en-

tire amount paid by the purchasers of mixed beverages to the sublessee is within the general definition of "gross sales" and is not a "sum collected and paid out for any sales or excise tax." Thus, lessor argues, the mixed-beverage tax is not a tax on the consumer-purchaser of mixed alcoholic beverage, but is, instead, a business expense paid by a permittee for the privilege of selling mixed alcoholic beverages under Texas law.

This distinction, in our view, is not controlling. Both taxes are imposed by the statutes on "gross receipts." As lessor concedes, the "limited sales tax" has no application to the sale of mixed alcoholic beverages, so that when one applies, the other does not. Like the sales tax, the mixed-beverage tax requires that an aggregate amount be collected from the customer and that a percentage then be paid over to the state. Whether the amount of the tax is computed as a percentage of the total amount paid by the customer, or by adding a percentage to the retail price, the result is substantially the same. The evident intent of the parties in agreeing to a percentage rental was to provide that the rental should be determined by the economic benefits to the lessee from doing business on the leased premises, as reflected by the gross sales of the lessee and any sublessee. Such benefits would not include any amounts collected by the lessee or a sublessee and paid over to the state as a tax measured directly by the amount of sales.

Any other interpretation would attribute to the parties an intention to fix the amount of the rentals according to a distinction which, however valid in law for other purposes, is irrelevant to the economic interests which the parties presumably had in mind in negotiating the lease. Consequently, we hold that the judge properly construed the lease as excluding the mixed-beverage tax paid by the sublessee from the amount of "gross sales" on which the percentage rental should be computed.

Affirmed.